No. 991 November 19, 2025 81

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of D. M. C.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

D. M. C.,
*Appellant.*

Jackson County Circuit Court
050591J; A181197 (Control), A181198

Timothy C. Gerking, Judge.

Submitted November 1, 2024.

Ginger Fitch and Youth, Rights & Justice filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patricia G. Rincon, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Youth appeals from a juvenile court order requiring that he report as a sex offender pursuant to ORS 163A.025. In a single assignment of error, he argues that the juvenile court erred in ruling that youth had not met his burden under ORS 163A.030(7)(b) of "proving by clear and convincing evidence that [he] is rehabilitated and does not pose a threat to the safety of the public," because it was not clear that the juvenile court applied the correct legal standard. For the reasons explained below, we affirm.

In 2012, when youth was 14 years old, the juvenile court determined him to be responsible except for insanity for conduct that would constitute first-degree sexual abuse if committed by an adult. In 2023, the juvenile court held a hearing pursuant to ORS 163A.030(1) on the issue of whether youth should be required to register as a sex offender pursuant to ORS 163A.025. At the hearing, youth had the "burden of proving by clear and convincing evidence that [he] is rehabilitated and does not pose a threat to the safety of the public." ORS 163A.030(7)(b). The juvenile court heard argument on and considered a list of nonexhaustive statutory factors to be used in making that determination. ORS 163A.030(8)(a) - (s). At the close of evidence and argument, the juvenile court took the matter under advisement without comment. It then issued a written order stating:

> "The court received sworn testimony from [youth] and from the victim [S], it received documents in evidence and also heard closing arguments from counsel. After taking the matter under advisement to review the evidence in the context of ORS 163A.030, the court finds after reviewing ORS 163A.030 and particularly subsection (8) therein, that [youth] failed to establish by clear and convincing evidence that he is rehabilitated and does not pose a threat to the safety of the public.
>
> "Accordingly, the court Orders that [youth] shall report as a sex offender and fully comply with ORS 163A.025."

After the juvenile court's order, the Supreme Court issued *State v. A. R. H.*, 371 Or 82, 530 P3d 897 (2023), which clarified several aspects of the meaning and application of ORS 163A.030. As relevant to this case, the Supreme Court

explained that the "'threat to the safety of the public' with which the legislature was concerned was the threat that the youth will commit future sex offenses * * * rather than a wider variety of generic threats." *Id.* at 94. In other words, in determining whether a youth should be required to register as a sex offender, "the standard to assess a youth's risk of reoffending is whether the youth presents a 'low risk' of committing future sex crimes." *State v. K. L. F.*, 333 Or App 434, 440, 552 P3d 722 (2024) (interpreting and applying *A. R. H.*). For that reason, there must be "some nexus" between the factors identified in ORS 163A.030(8) "and the question [of] whether the youth is rehabilitated and presently poses a risk of committing sex offenses." *A. R. H.*, 371 Or at 103.

On appeal, youth asks us to vacate and remand because it is unclear that the juvenile court applied the standard articulated in *A. R. H.*—in other words, the court could have improperly focused on his pre-adjudication conduct or his risk of reoffending generally, rather than on his current risk of sexual recidivism. He acknowledges that he is unable to demonstrate that the juvenile court erred. However, he argues that, when a change in the understanding of a governing statute occurs while an appeal is pending, it may be appropriate for us to vacate and remand even absent a showing of error.[1] In response, the state argues that youth's arguments are unpreserved and, at any rate, present no basis for reversal.

Assuming without deciding that the purposes of preservation were adequately served under the circumstances, we still reject youth's assignment of error on its merits. Youth acknowledges that it is not apparent on this record that the trial court applied an erroneous standard. Indeed, it is not apparent to us that the juvenile court erred. Under our usual standard of appellate review,[2] we "ask

---

[1] Youth argues that because *A. R. H.* had not yet been decided by the Supreme Court at the time of the hearing, he was unable to make certain tactical choices or develop the factual record necessary to correctly apply the statutory factors. We note, however, that youth apparently understood the correct standard, later articulated in *A. R. H.*, and advanced that correct standard to the court in his closing argument. In light of that record, youth has not persuaded us that the clarification provided by *A. R. H.* would lead to a meaningful difference in the tactical choices or development of record in this case.

[2] We recently exercised *de novo* review in two appeals of orders requiring youth sex offender reporting. *State v. X. E. W.*, 331 Or App 1, 2, 546 P3d 288

whether the evidence in the record, together with all reasonable, nonspeculative inferences that the factfinder could have drawn from the evidence, permitted the court's finding or, conversely, required a different finding." *A. R. H.*, 371 Or at 84. The record, viewed in light of the standard articulated in *A. R. H.*, permitted the juvenile court's finding that youth had not met his burden. The evidence indicated that youth made commendable progress in some respects. However, he did not complete sex offender treatment and could not meaningfully articulate what he had learned in treatment. When asked whether he is at risk to reoffend, he stated that he "know[s] the laws and how long [he] would go away for," but did not acknowledge the wrongfulness of his prior conduct. A risk assessment evaluation conducted at the end of his time at the Oregon State Hospital concluded that he was a "low to moderate risk for future incidents of sexually abusive behavior." More specifically, the evaluator determined that he was at low risk for sexually assaulting a child, but "his emotional dysregulation, antisociality, and recurrent violent/aggressive behavior raise[d] concern regarding potential risk" for other forms of sexual abuse.

Based on that record, we affirm the juvenile court's finding that youth failed to prove by clear and convincing evidence that he is rehabilitated and no longer a threat to the safety of the public.[3] *State v. B. J. P.*, 339 Or App 134, 149-50, 566 P3d 1187 (2025) (affirming the juvenile court's order for similar reasons); *A. R. H.*, 371 Or at 104-05 (affirming the juvenile court's order despite completion of sex offender treatment and an assessment determining the youth to be at low risk of sexual recidivism).[4]

_____

(2024); *K. L. F.*, 333 Or App at 435. The juvenile court in those cases, as in this case, issued its order before *A. R. H.* was published. In those cases, the juvenile court's ruling indicated that it had not applied the correct standard in considering the ORS 163A.030(8) factors. *X. E. W.*, 331 Or App at 12-13; *K. L. F.*, 333 Or App at 440-41. That is not the case here. We do not understand youth to have requested, nor do we provide, *de novo* review because this is not an extraordinary case justifying such review.

    [3] We note that ORS 163A.130 provides adjudicated juveniles with opportunities for relief from sex-offender reporting when a specified period of time has passed since the termination of juvenile court jurisdiction and certain other conditions are met.

    [4] We reject without extended discussion youth's contention that the state's closing argument may have caused the juvenile court to apply the wrong

Affirmed.

---

standard. As discussed, nothing in the record indicates that the court applied the wrong standard, and the state's argument did not urge the court to make its ultimate finding of fact based on an erroneous standard.